UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLENE M. HUFF,

                               Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

DECISION & ORDER

19-CV-0400MWP

**PRELIMINARY STATEMENT**

        Plaintiff Charlene M. Huff ("Huff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## **DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.  The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Huff had not engaged in substantial gainful activity since December 12, 2014, the alleged onset date. (Tr. 15-23).[1] At step two, the ALJ concluded that Huff had the severe impairments of obesity, degenerative joint disease of the left shoulder and neck, diabetes mellitus and left knee pain, status post multiple surgeries. (*Id.*). The ALJ also found that Huff suffered from hyperlipidemia, hypothyroidism, hypertension, plantar fascial fibromatosis and right shoulder pain, but that those impairments were nonsevere. (*Id.*). At step three, the ALJ determined that Huff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that Huff retained the RFC to perform light work with certain limitations. (*Id.*). Specifically, the ALJ found that Huff could not climb ladders, ropes, or scaffolds or work in proximity to dangerous machinery or unprotected heights; could frequently, but not constantly, climb ramps, stairs, and balance, and reach with her left dominant arm, occasionally kneel, crouch, and crawl; but was unable to engage in work requiring left overhead

---

[1]  The administrative transcript (Docket ## 6, 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

reaching.  (*Id.*).  At step four, the ALJ found that Huff was capable of performing her past relevant work as a general clerk and an apartment house manager.[2]  (*Id.*).  Accordingly, the ALJ found that Huff was not disabled.  (*Id.*).

### III.     Huff's Contentions

Huff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 10-1, 15).  First, Huff challenges the ALJ's step four finding on the grounds that he failed to resolve an apparent conflict between the overhead reaching limitation that he assessed and the Dictionary of Occupational Titles ("DOT").  (Docket ## 10-1 at 13-20; 15).  Next, Huff argues that the ALJ failed to properly evaluate her subjective complaints.  (Docket # 10-1 at 20-23).

### IV.     Analysis

#### A.     The ALJ's Assessment of Huff's Subjective Complaints

I turn first to Huff's contention that the ALJ improperly discounted her subjective complaints by mischaracterizing her treatment as conservative and failing to properly consider

---

[2] Whether the ALJ determined that Huff could perform her previous positions both as they are generally performed and as she actually performed them is unclear.  At one point in his decision the ALJ stated, "I find that the claimant is able to perform [the positions] as actually and generally performed."  (Tr. 23).  His concluding sentence, however, appears to reflect that his finding related to her ability to perform the positions as "they were actually performed."  (*Id.*).

The parties initially appeared to agree that the ALJ's determination was limited to concluding that Huff could perform the positions as they actually were performed, but not as they are performed in general.  (Docket ## 10-1 at 13; 14-1 at 14, 18).  In her reply, however, Huff maintained that the ALJ concluded that she could perform her previous positions both as actually and generally performed.  (Docket # 15 at 2).  In order to fully address Huff's contentions, I interpret the ALJ's decision to conclude that she could perform her previous work both as generally and actually performed.

the relevant factors. (*Id.* at 20-23). For the reasons explained below, Huff's challenge is without merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929.[3] First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptoms. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

The ALJ concluded that Huff's statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20). In doing so, the ALJ assessed Huff's subjective complaints in the context of the entire record. I disagree with

---

[3] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

Huff's contention that the ALJ mischaracterized or overlooked evidence in reaching his determination.

Huff's challenge largely rests on her disagreement with the ALJ's characterization of the record evidence, including the conservative nature of her treatment, the modest objective medical findings, and her ability to engage in activities of daily living – including household chores. (Docket # 10-1 at 20-23). She also maintains that the ALJ failed to consider the side effects of her medication or her work history. (*Id.*). None of these contentions warrants remand.

I conclude that the ALJ applied the proper legal standards in analyzing Huff's subjective complaints and that substantial evidence supports the ALJ's determination that Huff's complaints were "not credible" for the reasons he stated. *See Luther v. Colvin*, 2013 WL 3816540, *7 (W.D.N.Y. 2013) (ALJ properly assessed subjective complaints where she "reviewed all of [p]laintiff's subjective complaints . . . [and] properly considered [p]laintiff's activities of daily living, inconsistent testimony and how her symptoms affected her attempts at maintaining a job"). In his decision, the ALJ recounted much of Huff's treatment history, including imaging demonstrating only mild degeneration and treatment primarily involving physical therapy and injections. (Tr. 21-22). Although Huff was eventually referred for an MRI due to her ongoing neck and shoulder pain, she conceded at the hearing that the referral related to her very recent onset of shooting pain and that she had not received any other referrals for her shoulder impairment. (Tr. 509-10). Although the ALJ did not discuss Huff's employment history at length, he did note that Huff had lost her job as a result of a reorganization unrelated to her alleged disability and that she was able to perform some household chores and had obtained her associate's degree after the onset of her disability. (Tr. 22). I do not find that the ALJ overlooked material evidence or mischaracterized the record evidence regarding the conservative

7

nature of Huff's treatment, the relatively modest objective findings, or her ability to engage in activities of daily living.

In sum, Huff's challenge amounts to a disagreement with the ALJ's consideration of conflicting evidence. "[U]nder the substantial evidence standard of review, [however,] it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support [his] position." *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, \*6 (N.D.N.Y.), *report and recommendation adopted by*, 2016 WL 7238947 (N.D.N.Y. 2016). Rather, she must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Id.*; *see also Avant v. Colvin*, 2016 WL 5799080, \*3 (W.D.N.Y. 2016) ("[a]ll of [p]laintiff's arguments focus on the substantiality of the evidence supporting the ALJ's decision[;] [h]owever, as the Second Circuit has explained, 'whether there is substantial evidence supporting the claimant's views is not the question . . . , rather, the [c]ourt must decide whether substantial evidence supports the ALJ's decision'") (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (brackets omitted)). The ALJ's decision in this case demonstrates that he weighed the record evidence, including the conflicting evidence; no basis exists for this Court to overturn the ALJ's assessment of the evidence or his resolution of the conflicts in it. *See Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, \*9 (N.D.N.Y. 2015) ("[i]t is the province of the [ALJ] to consider and resolve conflicts in the evidence as long as the decision rests upon adequate findings supported by evidence having rational probative force[;] . . . [the ALJ] properly considered the totality of the record evidence, and concluded that the evidence quoted above outweighed [plaintiff's] evidence to the contrary") (internal quotation omitted).

B.   **The ALJ's Step Four Determination**

I turn next to Huff's challenge to the ALJ's step four assessment. (Docket ## 10-1 at 13-20; 15). Huff maintains that the ALJ erred in relying on the vocational expert's testimony in reaching his step four determination without first resolving an inconsistency between that testimony and the DOT. (*Id.*). Specifically, the hypothetical posed to the vocational expert included a limitation of no overhead reaching with the left arm, although both positions identified by the vocational expert as Huff's past relevant work – the positions of general clerk (DOT # 209.562-010, 1991 WL 671792) and apartment house manager (DOT # 186.167-018, 1991 WL 671326) – require frequent reaching according to the DOT. (*Id.*).

As this Court can best discern from the three-paragraph response to this argument, the Commissioner maintains that the ALJ determined that Huff could perform her previous positions as she actually performed them – a determination for which, according to the Commissioner, the DOT descriptions are wholly irrelevant. (Docket # 14-1 at 18-19). Thus, the Commissioner reasons, any unresolved conflict between the DOT and the vocational expert's testimony is not grounds for remand. (*Id.*).

"The regulations define 'past relevant work' as work performed within the preceding fifteen (15) years, performed long enough for the claimant to have learned how to do it, and which work constituted substantial gainful activity." *Kochanek v. Astrue*, 2010 WL 1705290, *10 (N.D.N.Y.) (citing 20 C.F.R. § 416.965), *report and recommendation adopted by*, 2010 WL 1713438 (N.D.N.Y. 2010). "[I]n the fourth stage of the [disability] inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). "[I]n order to determine at step four whether a claimant is able to perform her past work,

9

the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Matejka v. Barnhart*, 386 F. Supp. 2d at 204-05 (internal quotations omitted).  In making this inquiry, "[a]n ALJ may rely on the claimant's statements, which 'are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.'" *Kochanek v. Astrue*, 2010 WL 1705290 at *11 (quoting SSR 82-62, 1982 WL 31386, *3).  "An administrative law judge also may consult with a vocational expert witness who can provide evidence of 'physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.'" *Mathews v. Colvin*, 2014 WL 837712, *8 (N.D.N.Y. 2014) (quoting 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)).

SSR 00-4p provides that a vocational expert's testimony should generally be consistent with the occupational information contained in the DOT and "[w]hen there is an apparent unresolved conflict between [the testimony] and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the [vocational expert's testimony]." *See* SSR 00-4p, 2000 WL 1898704 (SSA 2000).  "Accordingly, the ALJ has a duty to elicit a reasonable explanation for any 'apparent unresolved conflict' between the [vocational expert's testimony] and the DOT, and to explain the resolution of the conflict before relying on the [testimony] in the decision." *Barone v. Colvin*, 2016 WL 4126544, *11 (S.D.N.Y. 2016).

In connection with her application for benefits, Huff completed a vocational report in which she indicated previous employment as a tenant manager, recruiter, and clerk. (Tr. 214-17).  According to Huff, these positions required her to perform tasks involving reaching for at least one hour per workday. (*Id.*).  During the hearing, the ALJ and Huff's

10

attorney elicited testimony from Huff regarding the physical demands of her prior relevant work. (Tr. 487-91). Huff testified that those positions required her to perform tasks such as answering phones, setting up interviews, placing job postings, collecting housing applications and rent, maintaining files, pulling reports, and making bank deposits. (Tr. 488-89). Huff indicated that her last employment as a tenant manager involved long periods of sitting, as well as retrieving files, both of which caused her pain. (Tr. 490-91).

The ALJ also elicited testimony from Lanell Hall ("Hall"), the vocational expert. Based upon Huff's testimony, Hall classified each of Huff's relevant past employment positions by a DOT number and title. She then provided characteristics of those positions, including the exertion levels and SVP, as they are typically performed in the national economy and as they were actually performed by Huff based upon her testimony. (Tr. 515-18). She testified that Huff previously worked as an apartment house manager under DOT number 186.167-018, which characterizes the position as skilled, light exertion, with an SVP of 5. (Tr. 518). According to Hall, based upon Huff's testimony the position was actually performed at the sedentary level of exertion. (*Id.*). She also testified that Huff had previously worked as general clerk under DOT number 209.562-010, which is characterized as semi-skilled, light exertion, with an SVP of 3. (Tr. 515). Again, according to Hall, Huff actually performed the position at the sedentary exertion level. (*Id.*). Hall opined that an individual with Huff's RFC limitations could not perform the occupations of general clerk and apartment house manager as they are generally performed, but would be able to perform both positions as Huff actually performed them. (Tr. 519-20).

I agree with Huff that there is an apparent conflict between the reaching requirements contained in the DOT descriptions of the positions identified by the vocational

11

expert and the ALJ's conclusion that Huff was unable to engage in any overhead reaching with her left dominant arm. *See Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 92-94 (2d Cir. 2019) ("[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring "reaching" . . . creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony"); *Marjanovic v. Comm'r of Soc. Sec.*, 2020 WL 3445676, *4 (W.D.N.Y. 2020) ("in this case there was at least a *possible* conflict between the DOT job descriptions and the VE's testimony: the VE opined that [plaintiff] could perform three jobs even though she could only occasionally reach overhead with her left arm, while the DOT states that those jobs demand frequent reaching, which is defined as extending the 'arms' in 'any direction'"); *Neumeister v. Comm'r of Soc. Sec.*, 2020 WL 3412469, *4 (W.D.N.Y. 2020) ("there is clearly a conflict between the DOT's definition of constant reaching with the RFC of occasional overhead reaching"). Further, I find that the apparent conflict between the vocational expert's testimony and the DOT was not acknowledged by either the ALJ or the vocational expert; thus, no attempt was made to resolve the apparent conflict. Under such circumstances, the ALJ erred to the extent he relied on the vocational expert's testimony at step four in determining that Huff was able to perform the positions of general clerk and apartment house manager as those positions are generally performed. *See Filer v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 517, 522 (W.D.N.Y. 2020) ("the RFC assessment limits [p]laintiff to no overhead reaching[;] [t]his conflict triggered the ALJ's affirmative duty to elicit a reasonable explanation that would justify crediting the [VE's] testimony") (internal quotation omitted).

    Nevertheless, I agree with the Commissioner that there is no conflict between the vocational expert's testimony that Huff could perform her past relevant work as actually

performed and the DOT because, "[i]n determining whether [Huff] could perform her [past relevant work] as actually performed, the ALJ did not (and could not) have relied on the DOT." *Id.* at 522-23. Rather, the DOT is only used "to evaluate jobs as they are *generally* performed." *See id.* (emphasis added). The salient question then is whether substantial record evidence exists to support the ALJ's conclusion that Huff was able to perform her previous positions despite her inability to reach overhead with her left arm. I find that there was not.

As discussed above, there is evidence in the record that Huff's previous positions as a general clerk and an apartment house manager required her to reach at least one hour each day. (Tr. 215, 217). That evidence does not make clear, however, whether the reaching involved reaching overhead with her left arm. Further, although the ALJ elicited testimony concerning the types of tasks Huff was required to perform, she did not testify whether those tasks required her to reach overhead. Under such circumstances, I find the ALJ's determination that Huff was able to perform her past work as it was actually performed is not based upon substantial evidence. *See Neumeister v. Comm'r of Soc. Sec.*, 2020 WL 3412469 at *4 (step four determination was not adequately supported where "[n]o testimony was offered or elicited about the ability to reach overhead"); *Woodard v. Comm'r of Soc. Sec.*, 2019 WL 5092126, *4 (W.D.N.Y. 2019) ("the ALJ found that plaintiff could perform [her past work] either as defined in the DOT or as she actually performed[,] . . . [but] [t]he testimony at the hearing . . . did not address whether she performed overhead reaching at [her previous employment]"); *cf. Filer v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d at 523 (upholding step four determination that claimant could perform her past work where the record evidence demonstrated that the work did not require any reaching). Accordingly, remand is appropriate for development of the record and reconsideration of the ALJ's conclusions at steps four and five. *See Neumeister*, 2020 WL 3412469 at *4 ("[a]n ALJ's

decision must contain specific findings of fact as to the physical and mental demands of the past relevant work when finding a claimant can perform her past relevant work[;] . . . there was no testimony from the VE or plaintiff regarding reaching in her past relevant work").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and Huff's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                      *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                       United States Magistrate Judge

Dated: Rochester, New York
         August 13, 2020